## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:17-CR-316** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **WILLIAM M. TYSON,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

The court sentenced defendant William M. Tyson to 180 months' imprisonment after he pled guilty to sex crimes involving minors.  Tyson now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  We will deny Tyson's motion.

## I.   Factual Background & Procedural History

A federal grand jury indicted Tyson on October 18, 2017, for interstate transportation of a minor for prostitution in violation of 18 U.S.C. § 2423(a) and production of child pornography in violation of 18 U.S.C. § 2251(a) and (e).  Prior to trial, the government filed a motion *in limine* to exclude evidence of mistake of age at trial.  We granted the government's motion, finding evidence of Tyson's knowledge of the minor victim's age was irrelevant and prejudicial.

Shortly after we excluded the mistake-of-age evidence, the parties entered into a conditional plea agreement preserving Tyson's right to appeal our decision regarding the motion *in limine*.  We accepted Tyson's guilty plea and, on December 20, 2018, sentenced Tyson to two concurrent terms of 180 months' imprisonment.  Tyson thereafter appealed our ruling precluding him from introducing mistake-of-

age evidence at trial.  Our court of appeals affirmed, and the United States Supreme Court denied Tyson's petition for writ of *certiorari*.  See United States v. Tyson, 947 F.3d 139 (3d Cir.), *cert.* denied, ___ U.S. ___, 141 S. Ct. 307 (2020).  After exhausting his direct appeals, Tyson filed a motion for compassionate release under 18 U.S.C. § 3582(c).  We denied the motion, finding Tyson had established neither extraordinary and compelling reasons for compassionate release nor that the Section 3553(a) factors warranted a sentence reduction.  Tyson now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  The motion is fully briefed and ripe for disposition.

## II.   Legal Standard

### A.   Section 2255

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence.  See 28 U.S.C. § 2255.  Courts may afford relief under Section 2255 on several grounds including, *inter alia*, when "the sentence was imposed in violation of the Constitution or the laws of the United States."  See 28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a).  The statute provides, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  See 28 U.S.C. § 2255(b).  The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record."  See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).  A court is required to hold an evidentiary hearing when the motion "allege[s]

any facts warranting § 2255 relief that are not clearly resolved by the record." See

United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at

546).

### B.    Ineffective Assistance of Counsel

A collateral attack based on ineffective assistance of counsel is governed

by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).

To prevail on an ineffective-assistance claim, a defendant must demonstrate

(1) counsel's representation fell below an objective level of reasonableness based on

prevailing professional norms, and (2) the deficient representation was prejudicial.

See Strickland, 466 U.S. at 687-88.  The defendant bears the burden of proving both

prongs.  See id. at 687.

To determine whether counsel has satisfied the objective standard of

reasonableness under the first prong, courts must be "highly deferential" toward

counsel's conduct.  See id. at 689.  There is a strong presumption that counsel's

performance falls within the broad range of reasonable professional assistance.  See

United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989) (quoting Strickland, 466 U.S.

at 689).  Only a "rare claim" of ineffectiveness of counsel should succeed "under the

properly deferential standard to be applied in scrutinizing counsel's performance."

Id. at 711 (citing Strickland, 466 U.S. at 689-90).  To satisfy the prejudice prong, the

defendant must establish a reasonable probability that, but for counsel's errors, the

outcome of the proceeding "would have been different."  See Strickland, 466 U.S. at

694.  The district court need not conduct its analysis of the two prongs in a

particular order or even address both prongs of the inquiry if the defendant makes

an insufficient showing in one.  See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008) (citations omitted).

III.   **Discussion**

Tyson asserts two grounds for relief in his Section 2255 motion: ineffective assistance of counsel, and cruel and unusual punishment.  We will address Tyson's claims *seriatim*.

**A.   Ineffective Assistance of Counsel**

Regarding ineffective assistance, Tyson alleges Attorney Abom failed to review the plea agreement with him during the plea-bargaining stage and did not appropriately address his post-plea request to have a certain paragraph removed from the plea agreement.  We conclude Tyson fails to establish a Sixth Amendment violation on either ground.

**1.   *Plea-Bargaining Stage***

Tyson's ineffective-assistance claim relating to the plea-bargaining stage focuses on an email conversation between Attorney Abom and Tyson which took place on July 12, 2018, while Tyson was on pretrial release.  (See Doc. 106 at 1-3).[1] Attorney Abom emailed Tyson at 11:45 a.m. and gave Tyson specific language to email back to Attorney Abom, by separate email, confirming (1) the pair reviewed

---

[1] Tyson filed two briefs in support of his motion to vacate: an initial brief (Doc. 105) filed October 1, 2021, and an "amended" brief (Doc. 106) filed October 4, 2021.  We cite to the amended brief as the fullest embodiment of Tyson's arguments. The factual narrative that follows derives primarily from Tyson's description of his conversation with Attorney Abom, which is corroborated by and consistent with the copy of that email exchange attached to the filed plea agreement.  (See Doc. 106 at 1-2; Doc. 67 at 38).

the plea agreement together that morning and (2) Tyson was authorizing Attorney Abom to sign the plea agreement on Tyson's behalf.  (See id. at 1-2).  Tyson emailed Attorney Abom at 12:24 p.m. stating: "I have read your email and I agree under the agreement that all in plea is true."  (See id. at 2).  Ten minutes later, ostensibly based on a follow-up conversation between client and counsel, Tyson sent a second email, this time with the full authorization Attorney Abom initially had requested from him, namely: "I have received and reviewed with you the Plea Agreement you emailed to me on July 12, 2018.  I Understand it and agree to it.  I am asking you to sign the agreement on my behalf.  I am in Virginia and don't have a printer."  (See id.; Doc. 67 at 38).  Attorney Abom subsequently signed the plea agreement, noting Tyson authorized him to do so and attaching a copy of the email.  (See Doc. 67 at 37-38).  Tyson himself signed the plea agreement prior to his change of plea hearing several days later.  (See Doc. 67-1; see also Doc. 111, 7/16/18 Tr. 2:20-25, 8:11-18, 13:2-5).

　　　Tyson's argument related to plea negotiations is difficult to parse, but he appears to suggest Attorney Abom could not possibly have fully explained the plea agreement prior to Tyson's acceptance of the agreement "via email correspondence on July 12, 2018."  (See Doc. 106 at 2).  He also implies Attorney Abom failed to explain the significance of paragraph 35 of the agreement prior to Tyson entering his guilty plea.  (See id. at 3).  Paragraph 35 of the agreement, entitled "Civil Commitment as a Sexually Dangerous Person," advises Tyson he may be subject to civil commitment under 18 U.S.C. § 4248 following expiration of his term of imprisonment.  (See Doc. 67 ¶ 35).  The referenced statute, 18 U.S.C. § 4248

authorizes federal district courts to order civil commitment of a federal prisoner,

beyond the date the prisoner otherwise would be released from custody, if the

court, after a hearing, determines the individual is a "sexually dangerous person"

due to mental illness.  See 18 U.S.C. § 4248; United States v. Comstock, 560 U.S. 126,

129-31 (2010).

      Attorneys have a responsibility under the Sixth Amendment to the United

States Constitution to advise their clients of the advantages and disadvantages of a

guilty plea.  See Padilla v. Kentucky, 559 U.S. 356, 370, 373 (2010) (quoting Libretti

v. United States, 516 U.S. 29, 50-51 (1995)).  This duty pertains primarily to direct

consequences of a guilty plea, but in Padilla, the United States Supreme Court

extended it to the seemingly collateral consequences of deportation.  See id. at 366,

373-74; see also id. at 375-76 (Alito, J. concurring).  The Court reasoned deportation

"uniquely" could not be classified as either a direct or collateral consequence of a

guilty plea because it bears such a "close connection to the criminal process" and is

often "an automatic result" of a guilty plea.  See id. at 366.  Hence, the Court

concluded misadvising (or failing to advise) a defendant regarding the immigration

consequences of their plea can effect a violation of their Sixth Amendment rights.

See Chaidez v. United States, 568 U.S. 342, 353 (2013) (citing Padilla, 559 U.S. at

366).

      The direct or collateral status of civil commitment under the Sixth

Amendment, unlike deportation, is not ambiguous—civil commitment is a collateral

consequence of pleading guilty to a sex crime.  See Chaidez, 568 U.S. at 349 n.5

(citing Padilla, 559 U.S. at 376).  Neither the Supreme Court nor our court of

appeals has had occasion to consider whether attorneys have an affirmative duty to advise their clients about the possibility of civil commitment.  Nevertheless, every federal court to address the question has held failing to raise the possibility of civil commitment proactively does not constitute ineffective assistance of counsel.  See, e.g., Kim v. Dir., Va. Dep't of Corr., 103 F. Supp. 3d 749, 755-58 (E.D. Va. 2015); Maxwell v. Larkins, No. 4:08-CV-1896, 2010 WL 2680333, at *9-10 (E.D. Mo. July 1, 2010); Fugitt v. United States, No. 4:12-CV-1089, 2016 WL 1305950, at *3 (E.D. Mo. Apr. 1, 2016); see also, e.g., Brown v. Goodwin, No. 09-211, 2010 WL 1930574, at *13-14 (D.N.J. May 11, 2010) ("[T]he holding of Padilla seems not importable—either entirely or, at the very least, not readily importable—into scenarios involving collateral consequences other than deportation.").  These courts differentiate civil commitment from the unique consequence of deportation by emphasizing civil commitment is neither a mandatory nor an automatic consequence of a guilty plea; additional procedural and factfinding steps are required.  See Kim, 103 F. Supp. 3d at 756; Maxwell, 2010 WL 2680333, at *10; Fugitt, 2016 WL 1305950, at *3.  We agree with and adopt the sound reasoning of this consensus and hold Attorney Abom had no obligation to explain the risk of civil commitment to Tyson prior to his guilty plea.

Assuming *arguendo* Attorney Abom *did* have a duty to explain the civil commitment paragraph, Tyson affirmed during the change of plea hearing on July 16, 2018, that Attorney Abom did so.  The exchange proceeded, in relevant part, as follows:

> THE COURT:  I would like to have the plea agreement
> placed before the defendant, and I would also like to have
> the signature line of the defendant placed before him. . . .
> Is that your signature, sir?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And immediately above your signature is
> an acknowledgment, and the acknowledgment states as
> follows, "I have read this agreement *and carefully
> reviewed every part of it with my attorney*.  I fully
> understand it and I voluntarily agree to it."  Is that
> statement accurate, sir?
>
> THE DEFENDANT:  Yes, sir.

(See 7/16/18 Tr. 8:12-24) (emphasis added).  Additionally, Attorney Abom affirmed

he "carefully reviewed every part of th[e] agreement with the defendant," and to his

knowledge, Tyson's decision to enter into the agreement was "an informed and

voluntary one."  (See id. at 10:2-9).  A review of "every part of" the agreement

necessarily would have included paragraph 35.  Tyson's statements under oath and

his attorney's concurrence therewith squarely refute Tyson's present suggestion the

record "begs the question" whether Attorney Abom actually reviewed that

paragraph.  (See Doc. 106 at 2-3).

For these reasons, we find Tyson has failed to establish Attorney Abom's

performance during the plea-bargaining stage fell below the objective level of

reasonableness.  We need not address the question of prejudice because Tyson's

claim of pre-plea ineffective assistance of counsel fails the first Strickland prong.

See Strickland, 466 U.S. at 697.

8

2.      ***Post-Plea Stage***

Tyson's second claim for ineffective assistance relates to Attorney Abom's post-plea conduct with regard to paragraph 35 of the plea agreement.  Tyson claims he only came to understand the significance of paragraph 35 after he was remanded into federal custody following his guilty plea and conducted independent research at the prison law library.  (See Doc. 106 at 3).  After realizing (supposedly for the first time) he could be subject to civil commitment after completing his prison term, Tyson purportedly asked Attorney Abom to move for an "evidentiary hearing" to have paragraph 35 "suppressed" from the plea agreement.  (See id.)  Tyson asserts he told Attorney Abom he would have preferred to go to trial rather than to persist in his guilty plea if the paragraph could not be removed from the plea agreement.  (See id.)  According to Tyson, Attorney Abom assured him he "had nothing to worry about" because the court did not specifically reference civil commitment during the change of plea hearing.  (See id.)  During allocution at his sentencing hearing, Tyson said:

> Your Honor, I would like the courts to be aware that throughout this time there's certain things that I asked Mr. Abom to file and it was never filed.  So I would like to state that on record if that's okay. . . .  Your Honor, I asked Mr. Abom to file the evidentiary hearing that it never got addressed and I never received any noticing that it got filed.  Also I asked him to file a suppression before we had got to this part of, you know, the sentencing.

(See Doc. 89, 12/19/18 Tr. 6:4-14).

While we are skeptical Attorney Abom provided Tyson with the advice Tyson claims, we must assume Tyson's averments are true unless they are clearly contradicted by the record.  See Booth, 432 F.3d at 545.  We will also assume, for the sake of argument, that Attorney Abom's supposed advice was erroneous.[2]  At least one court has found a lawyer's pre-plea misadvice regarding a defendant's exposure to civil commitment can constitute deficient performance, see Bauder v. Dep't of Corr., 619 F.3d 1272, 1275 (11th Cir. 2010), and if our court of appeals were to adopt and extend that holding to post-plea misadvice, Tyson would be able to show Attorney Abom rendered deficient performance.

Even so, Tyson's ineffective-assistance claim cannot succeed because his allegations do not raise a reasonable probability the outcome of his case would have been different.  See Strickland, 466 U.S. at 694.  We interpret Tyson's objection to paragraph 35 and his instructions to Attorney Abom to ultimately equate with a

---

[2] The court must ensure a defendant is informed of the direct consequences of pleading guilty before accepting the plea, see Brady v. United States, 397 U.S. 742, 748 (1970); see also FED. R. CRIM. P. 11(b)(1), but the court need not advise a defendant of the "adverse *collateral* consequences of pleading guilty, even if they are foreseeable," see Parry v. Rosemeyer, 64 F.3d 110, 114 (3d Cir. 1995) (citations omitted).  While our court of appeals has yet to address whether judges have a duty to inform defendants of the potential for civil commitment, all other circuit courts to consider this issue agree civil commitment is a collateral consequence which trial courts need not address with a defendant during a change of plea hearing.  See, e.g., United States v. Youngs, 687 F.3d 56, 57, 61 (2d Cir. 2012); Steele v. Murphy, 365 F.3d 14, 17 (1st Cir. 2004).  Thus, this court had no obligation to mention the possibility of civil commitment during Tyson's change of plea hearing, and, in contrast to Attorney Abom's alleged advice, Tyson remained exposed to potential civil commitment after the hearing.

request for Attorney Abom to file a motion to withdraw Tyson's guilty plea.[3]  A

defendant may withdraw a guilty plea after acceptance but prior to imposition of

sentence only if "the defendant can show a fair and just reason for requesting the

withdrawal."  See FED. R. CRIM. P. 11(d).  A defendant bears a "substantial burden"

when attempting to justify a withdrawal.  See United States v. Siddons, 660 F.3d

699, 703 (3d Cir. 2011) (citing United States v. King, 604 F.3d 125, 139 (3d Cir. 2010)).

When deciding if a defendant may withdraw their guilty plea, courts consider

(1) whether the defendant is asserting innocence, (2) whether the defendant's

reasons for withdrawing the plea are strong, and (3) whether the government would

suffer prejudice because of the withdrawn plea.  See United States v. Kwasnik, 55

F.4th 212, 216-17 (3d Cir. 2022) (citing United States v. Jones, 336 F.3d 245, 252 (3d

Cir. 2003)).  Our court of appeals holds "[a] shift in defense tactics, a change of

mind, or the fear of punishment are not adequate reasons to impose on the

government the expense, difficulty, and risk of trying a defendant who has already

acknowledged his guilt by pleading guilty."  See Jones, 336 F.3d at 318.

---

[3] Tyson uses the term "suppressed" throughout his briefing to describe
the relief he hoped to seek from the court with respect to paragraph 35.  (See, e.g.,
Doc. 106 at 3).  We assume what Tyson actually sought was to ask the court to strike
the paragraph from the plea agreement, and, if unsuccessful, to move to withdraw
his guilty plea.  Tyson has identified neither a factual nor legal basis upon which the
court could have modified the parties' agreement after it was accepted.  Because
Tyson insists he would not have entered into the agreement had he understood his
potential exposure to civil commitment, (see Doc. 106 at 3), the only available
remedy for his purported misunderstanding would have been a motion to withdraw
his guilty plea.

Against this backdrop, we have little difficulty concluding any motion to withdraw necessarily would have failed. First, the record does not reflect any assertion of innocence on Tyson's part. Second, and most problematic for our present purposes, the strength of Tyson's reasons for withdrawing his plea are unconvincing. Tyson's assertion he did not know about the contents of paragraph 35 is severely undercut by his statements under oath during his change of plea hearing. As noted *supra*, during the colloquy with the court, Tyson confirmed he fully reviewed and understood the plea agreement before entering his guilty plea. (See 7/16/18 Tr. 12:12-24). Paragraph 35 of the agreement warns Tyson explicitly he might face civil commitment and includes a sentence affirming Tyson "wants to plead guilty regardless of any potential civil commitment consequences that [his] plea may entail." (See Doc. 67 ¶ 35). It is highly unlikely that any court would give greater weight to Tyson's post-plea insinuations than his statement under oath and his signed attestation in the plea agreement. Finally, the court need not address the third factor "when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea." See United States v. Hill-Johnson, 806 F. App'x 114, 118 (3d Cir. 2020) (nonprecedential) (quoting Jones, 336 F.3d at 255).

Given the weakness of the argument for withdrawal, there is not a reasonable probability a judge would have granted Tyson's motion even if Attorney Abom had filed it. Attorney Abom's decision to not mount a post-plea challenge to paragraph 35 or to move to withdraw Tyson's plea, even if deficient, did not prejudice Tyson because neither action would have impacted the outcome of the case. Tyson's claim

of post-plea ineffective assistance of counsel fails to satisfy the second <u>Strickland</u>

prong.  See <u>Strickland</u>, 466 U.S. at 697.

###    B.    Cruel and Unusual Punishment

In his second ground for relief, Tyson argues his incarceration during the

COVID-19 pandemic amounts to cruel and unusual punishment in violation of the

Eighth Amendment.  (<u>See</u> Doc. 106 at 8).  Tyson asserts this claim in a motion to

vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  (<u>See</u> Doc. 104).

Motions under Section 2255 are "expressly limited to challenges to the validity of

the petitioner's sentence."  <u>Woodall v. Fed. Bureau of Prisons</u>, 432 F.3d 235, 241 (3d

Cir. 2005) (quoting <u>Coady v. Vaughn</u>, 251 F.3d 480, 485 (3d Cir. 2001)).  Challenges to

the "manner, location, or conditions of a sentence's execution" are not cognizable

under Section 2255.  See <u>id.</u> at 242 (internal quotation marks and citation omitted).

Tyson's claim his imprisonment during the now-abated COVID-19 pandemic

constituted cruel and unusual punishment is not a challenge to the validity of his

conviction or sentence.  See <u>id.</u> (citing <u>Jiminian v. Nash</u>, 245 F.3d 144 (2d Cir. 2001)).

We will deny Tyson's Section 2255 motion insofar as it relates to cruel and unusual

punishment without prejudice to his reraising the claim under a more appropriate statute.[4]

## V.   <u>Conclusion</u>

We will deny Tyson's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  We will also deny a certificate of appealability, because Tyson has not "made a substantial showing of the denial of a constitutional right."  <u>See</u> 28 U.S.C. § 2253(c)(2).  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     July 6, 2023

---

[4] Tyson asks the court, in the alternative, to "find[] a legal justification for providing the Movant with some form of relief with respect to this issue."  (<u>See</u> Doc. 106 at 9).  Claims related to cruel and usual punishment and other conditions of confinement are cognizable in certain civil actions and, in extreme circumstances, via habeas petitions brought under 28 U.S.C. § 2241.  <u>See</u> <u>Camacho Lopez v. Lowe</u>, 452 F. Supp. 3d 150, 157-60 (M.D. Pa.), <u>as amended</u> (Apr. 9, 2020).  Prisoners may also raise conditions of confinement as a basis for compassionate release pursuant to 18 U.S.C. § 3582(c).  These avenues are subject to varying filing fees, procedural and venue rules, and in some cases, exhaustion requirements, none of which are addressed in Tyson's conclusory request that the court find a way to grant "some form" of relief on this ground.  We therefore will deny Tyson's motion in this respect, without prejudice to any right he may have to pursue his desired remedies by alternative means.